JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| QIMING WANG,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>ALEJANDRO MAYORKAS, Secretary of Homeland Security; UR MENDOZA JADDOU, Director of the United States Bureau of Citizenship and Immigration Services; and TRACY TARANGO, Director of the California Service Center, U.S. Citizenship and Immigration Services,<br><br>　　　　　　　Defendants. | Case No. 2:24-cv-3189-SPG-MAR<br><br>**ORDER DISMISSING PLAINTIFF'S COMPLAINT AND DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AS MOOT [ECF No. 14]** |

　　　　Before the Court is Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 14 ("Motion")). Defendants Alejandro Mayorkas ("Mayorkas"), sued in his official capacity as Secretary of the Department of Homeland Security ("DHS"); Ur Mendoza Jaddou ("Jaddou"), sued in her official capacity as the Director of the United States Citizenship and Immigration Service ("USCIS"); and Tracy Tarango, ("Tarango"), sued in her official capacity as the Director of the California Service Center of USCIS (collectively "Defendants") oppose. (ECF No. 20 ("Opp.")). The Court

has read and considered the matters raised with respect to the motion and concluded that this matter is suitable for decision without oral argument. *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. Having considered the parties' submissions, the relevant law, and the record in this case, the Court DISMISSES the Complaint WITHOUT PREJUDICE and DENIES Plaintiff's Motion as moot.

## I.    BACKGROUND

The following is alleged in Plaintiff's Complaint, (ECF No.1), unless otherwise noted:

Plaintiff Qiming Wang, who entered the United States in August 2013 on a F-1 student visa, is a national of the People's Republic of China. (ECF No. 1 ("Compl.") ¶ 92). In May 2015, Plaintiff completed a master's program in electrical and computer engineering. (*Id.*). After the completion of his academic program, Plaintiff was eligible to remain in the U.S. by participating in the Optional Practical Training Program ("OPT"), a "regulatory authorized training program" that allows for foreign graduates to remain in the U.S. and continue their F-1 status by being employed for up to 12 months by U.S. companies. (*Id.* ¶¶ 39–40).

On August 3, 2015, Plaintiff received an offer letter from Findream, which offered Plaintiff an internship in its "IT Department as [a] Software Engineer." (*Id.* ¶ 93; ECF No. 1-2 at 98). Findream also required Plaintiff to pay a "$200 handling fee." (*Id.* ¶ 94). In approximately September 2015, once Plaintiff had paid the fee and accepted the offer, Plaintiff began working as a Software Engineer intern at Findream. (*Id.* ¶¶ 93–94). Plaintiff terminated his employment with Findream in early March 2016 after receiving an offer for a paid position as a software engineer with Video Analytica, Inc. (*Id.* ¶¶ 98–99). On July 9, 2016, Plaintiff's OPT authorization expired and Video Analytica sponsored an OPT authorization from July 10, 2016, to July 9, 2018. (*Id.* ¶ 108). On February 27, 2017, Plaintiff transitioned to a software engineer position at Last Word Consulting, Inc. who subsequently sponsored Plaintiff's change of status from an F-1 student to H-1B status. (*Id.* ¶ 109). Plaintiff's original H-1B status was valid from October

1, 2018, to August 21, 2021. (*Id.*). On September 5, 2019, Pluto TV Inc. ("PTVI") offered Plaintiff a position as a senior software engineer. (*Id.* ¶ 110). After Plaintiff's H-1B transfer application was approved for the period from October 7, 2019, to October 6, 2022, Plaintiff began working for PTVI on October 21, 2019. (*Id.* ¶ 111). Throughout his various employment, Plaintiff duly reported his employment in immigration filings, including his Findream employment. *See* (*Id.* ¶ 101). On July 18, 2022, PTVI filed Plaintiff's H-1B visa extension application. (*Id.* ¶ 111).

On May 18, 2023, Defendants issued a Notice of Intent to Deny ("NOID") Plaintiff's July 18, 2022, application for an H-1B extension based on Plaintiff's employment history with Findream (the "May 18 NOID"). (*Id.*). In particular, in July 2019, Findream and its owner, Huang, were charged with several counts of fraud for allegedly providing false offer and verification of employment letters as evidence of employment for students to use to show compliance with OPT requirements. (*Id.* ¶ 87). In December 2019, Huang pled guilty to one count of conspiracy to commit fraud in which Huang stated that "some of the F-1 students she hired 'knew' of the fraudulent scheme." (*Id.* ¶ 88). The May 18 NOID asserted that Plaintiff had made willful misrepresentations in his immigration filings regarding his employment with Findream, and thus Defendants deemed Plaintiff ineligible for an H-1B visa extension. (*Id.* ¶ 112). Plaintiff "timely responded" to the May 18 NOID, but Defendants never issued a decision on the H-1B extension. (*Id.* ¶¶ 112–13).

On December 5, 2023, PTVI terminated Plaintiff's employment due to his "immigration issues." (*Id.* ¶ 113). On an unidentified date thereafter, Plaintiff enrolled in a master's program in Information Technology at Westcliff University in Irvine, California. (*Id.* ¶ 114). In January 2024, Plaintiff submitted a I-539 Application to USCIS requesting a change of nonimmigrant status from H-1B to F-1 student status (the "Application"). (*Id.*); *see also* (*id.* ¶ 117; ECF No. 1-2 at 202*)*. In Plaintiff's Application, he filed a supplemental memorandum and evidence to respond "in full" to the accusations in the May 18 NOID. (*Id.* ¶ 115). On February 7, 2024, Defendants issued their decision that USCIS intended to deny the Application (the "February 7 Denial"). (*Id.* ¶ 117; ECF No. 1-2 at 202–12).

Similar to the May 18 NOID, the February 7 Denial contained a finding that Plaintiff was inadmissible under 8 U.S.C. § 1182(a)(6)(C)(i) for willful misrepresentations in immigration documents regarding his employment with Findream. *See* (*id.* ¶ 117).

Plaintiff commenced this action on April 18, 2024. (ECF No. 1). Plaintiff served Defendants on April 24, 2024. (ECF No. 12). The Complaint contains three counts against Defendants, which assert Defendants violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, and Plaintiff's due process rights. *See generally* (Compl). On April 25, 2024, Defendants informed Plaintiff, through his counsel, that Defendants were reopening Plaintiff's Application. *See* (ECF No. 20 at 19, ¶ 4; ECF No. 20-1). Also on April 25, 2024, after Plaintiff's counsel was informed of Defendants' reopening of the Application, Plaintiff filed the present Motion asking the Court to postpone the effectiveness of Defendant's inadmissibility finding.[1] *See* (ECF No. 14 ("Mot.")). Defendants timely opposed. (ECF No. 20 ("Opp.")).

## II.   LEGAL STANDARD

### A.   Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Defendants may seek dismissal of a complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Federal courts are also "required *sua sponte* to examine jurisdictional issues such as standing." *See B.C. v. Plumas Unified Sch. Dist.*, 192 F.3d 1260, 1264 (9th Cir.1999); *See Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) (obliging courts to examine subject-matter jurisdiction issues *sua sponte*). Attacks on jurisdiction may be "either facial or factual." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In a facial attack, like the one here, the party challenging jurisdiction asserts that the "allegations contained in a complaint are

---

[1] On April 26, 2024, Plaintiff filed another motion for a temporary restraining order, this time asking the Court to enjoin Defendants from reopening Plaintiff's Application. (ECF No. 17). Because the April 26, 2024, motion purported to supplement the present Motion and was unsupported by a declaration, the Court struck the April 26 filing. (ECF No. 19).

insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) ("By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction.").[2] The burden of demonstrating subject matter jurisdiction rests on the party asserting jurisdiction. *United States v. Orr Water Ditch Co.*, 600 F.3d 1152, 1157 (9th Cir. 2010).

Article III of the Constitution also limits federal subject matter jurisdiction to "cases and controversies," *Fed. Bureau of Investigation v. Fikre*, 601 U.S. 234, 144 S. Ct. 771, 777 (2024) (quoting U.S. Const. art. III. §§ 1, 2), a requirement interpreted to require that "an actual controversy . . . be extant at all stages of review, not merely at the time the complaint is filed." *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 67 (1997) (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)). "A claim is moot if it has lost its character as a present, live controversy." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009) (citation omitted). "If there is no longer a possibility that an appellant can obtain relief for his claim, that claim is moot and must be dismissed for lack of jurisdiction." *Ruvalcaba v. City of L.A.*, 167 F.3d 514, 521 (9th Cir.1999).

### B.     Temporary Restraining Order

A temporary restraining order is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. NRDC, Inc.*,

---

[2] Though the parties do not specify the type of jurisdictional attack here, the Court finds that this is a factual attack on the Complaint because Defendants assert, based on extrinsic evidence, that the agency's reopening of its prior decision rendered moot the relief Plaintiff requests in the Complaint (reversal of the inadmissibility determination and setting aside of the I-539 decision) and Motion (postponement of the agency's finding of Plaintiff's inadmissibility), thereby defeating the case or controversy requirement. *See* (Opp. at 5); *Safe Air for Everyone*, 373 F.3d at 1039; *See CarMax Auto Superstores Cal. LLC v. Hernandez*, 94 F. Supp. 3d 1078, 1088–89 (C.D. Cal. 2015) (noting that "a jurisdictional challenge was a factual attack where it relied on extrinsic evidence and did not assert lack of subject matter jurisdiction solely on the basis of the pleadings." (internal quotation marks and citation omitted)).

555 U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)). The purpose of a temporary restraining order is to preserve the status quo before a preliminary injunction hearing may be held. *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974). The standard for issuing a temporary restraining order is essentially the same as that for issuing a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (stating that the analysis for temporary restraining orders and preliminary injunctions is "substantially identical").

Under *Winter*, a plaintiff may secure a temporary restraining order only if he establishes: (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. *Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012) (citing *Winter*, 555 U.S. 7, 20 (2008)). "'[S]erious questions going to the merits' and a hardship balance that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). "In each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Winter*, 555 U.S. at 24 (citing *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542 (1987)). "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Id.* (quoting *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312 (1982)).

### III. DISCUSSION

Plaintiff asks the Court to issue a temporary restraining order to postpone the "effectiveness" of Defendants' denial of Plaintiff's Application and of Defendants' determination that Plaintiff is inadmissible for willful misrepresentation under 8 U.S.C. § 1182(a)(6)(C)(i). Defendants contend, among other arguments, that Plaintiff's request

was mooted when Defendants reopened Plaintiff's Application and vacated USCIS's "prior decision [denying the Application] and concomitate finding of inadmissibility," and that the reopening of the Application strips this Court of its jurisdiction to consider final agency action. (Opp. at 5). Because subject matter jurisdiction is a threshold determination to be made separately from and prior to the consideration of the merits of the Motion, the Court considers Defendants' jurisdictional argument first.

### A. Subject Matter Jurisdiction

Defendants represent that on April 25, 2024, USCIS personnel informed counsel for Defendants that USCIS was "reopening Plaintiff's Form I-539," and such reopening would allow Plaintiff to submit evidence in response to the findings included in the withdrawn denial. (ECF No. 20 at 19, ¶ 3).[3] Defendants also attach a notice, dated April 25, 2024, that USCIS has "reopened [Plaintiff's] case, or reconsidered the decision previously issued on [Plaintiff's] case. [USCIS] will notify you in writing when we make a decision on your case or if we need additional information." (ECF No. 20-1). Defendants argue that this Court does not have jurisdiction to consider Plaintiff's APA claim without a final agency action to review, and, even if it did, USCIS's reconsideration of the inadmissibility determination moots Plaintiff's request in the TRO to postpone the effectiveness of the inadmissibility.

#### 1. Final Agency Action

The APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. "Under the APA, agency action is subject to judicial review only when it is either: (1) made reviewable by statute; or (2) a 'final' action 'for which there is no other adequate remedy in a court." *Cabaccang v. U.S. Citizenship & Immigration Servs.*, 627 F.3d 1313, 1315 (9th Cir.2010) (quoting 5

---

[3] Defense Counsel also represents that counsel for Plaintiff was informed, before filing his Motion, of USCIS's decision to reopen the case and of Defense Counsel's view that Plaintiff's request was moot. *See* (ECF No. 20 at 19, ¶ 4).

U.S.C. § 704)). Here, Plaintiff's Complaint does not identify a particular statute that authorizes judicial review of the denial of the Application or the accompanying inadmissibility determination.[4] *See Cabaccang*, 627 F.3d at 1315 ("No statute authorizes judicial review over denials of status adjustment, so the sole issue here is whether USCIS's denial of the [the plaintiffs'] applications was a 'final' agency action for which there was no other adequate remedy."). Therefore, the "sole issue" for the Court to consider is whether there is a final agency action permitting the Court's jurisdiction. *See id.*

Two conditions must be satisfied for agency action to be final: (1) the action must mark the "consummation of the agency's decisionmaking process, . . . [and] not be of a merely tentative or interlocutory nature," and (2) the action must be one by which "rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (internal quotation marks and citations omitted); *see also Fairbanks N. Star Borough v. U.S. Army Corp. of Eng'rs*, 543 F.3d 586, 591 (9th Cir. 2008) (affirming the district's courts dismissal because "finality is a jurisdictional requirement to obtaining judicial review under the APA"). If one prong of the finality test is not met, a court need not reach the other prong. *See Bennett*, 520 U.S. at 178. Under the first prong of the finality test, a court looks to see whether the agency 'has rendered its last word on the matter." *Oregon Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 984 (9th Cir. 2006) (quoting *Whitman v. Am. Trucking Ass'n*, 531 U.S. 457, 478 (2001)). Under the second prong, the Ninth Circuit has held "[t]he general rule is that

---

[4] Plaintiff alleges that the Court has jurisdiction to consider the inadmissibility determination because "neither the APA nor the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 [ ] prevents the Court from reviewing non-discretionary actions by Defendants." (Compl. ¶ 24 (quoting 5 U.S.C. § 701(a)(2)). To the extent Plaintiff is asserting that the cited statutes, including 8 U.S.C. § 1252 (which governs judicial review over orders of removal, not alleged here), "authorized" judicial review here, the Court disagrees. *See generally Cabaccang*, 627 F.3d at 1315 ("No statute authorizes judicial review over denials of status adjustment."). Plaintiff's allegations do not set forth a statute that authorizes review of the specific agency action here—at most, these allegations may go to whether the APA *prevents* judicial review.

administrative orders are not final and reviewable 'unless and until they impose an obligation, deny a right, or fix some legal relationship as a consummation of the administrative process.'" *Oregon Nat. Desert,* 465 F.3d at 986–87 (citation omitted).

Here, the Court has no jurisdiction over the Complaint because the USCIS's prior denial of Plaintiff's Application is not final. When an agency reopens a prior final decision, the decision is rendered "non-final and therefore not subject to review under the APA." *True Cap. Mgmt., LLC v. U.S. Dep't of Homeland Sec.*, No. 13-261 JSC, 2013 WL 3157904, at *4 (N.D. Cal. June 20, 2013) (finding no subject matter jurisdiction over the plaintiff's objection that the reopening of the application was "solely for the purpose of delay" and to "deprive [the plaintiffs] of the ability to obtain judicial review"); *see also Bhasin v. U.S. Dep't of Homeland Sec.*, 413 F. App'x 983, 985 (9th Cir. 2011) (when USCIS "vacated its [ ] denial" and reopens proceedings, "the denial is not a 'final agency action' under 5 U.S.C. §704 and is not subject to judicial review under the Administrative Procedure Act"). Plaintiff's Application has been reopened and, thus, any prior decision has been rendered non-final. *See Net-Inspect, LLC v. U.S. Citizenship & Immigr. Servs.*, No. C14-1514JLR, 2015 WL 880956, at *4 (W.D. Wash. Mar. 2, 2015) ("[C]ourts in the Ninth Circuit have consistently concluded that pending, reopened agency decisions are non-final." (citing cases)).

In stark contrast to USCIS having rendered its "last word on the matter," the notice of reopening reflects that USCIS has yet to make a final decision on Plaintiff's re-opened Application. *See Oregon Nat. Desert*, 465 F.3d at 984; *see also* (ECF No. 20-1). To illustrate the point further, if the Court were to consider Plaintiff's claims now, despite USCIS's April 25 Notice, the agency and the Court would be "simultaneously considering the same issues and the agency's prior determination could change at any time wholly undermining the purposes of the finality doctrine." *True Cap. Mgmt.*, 2013 WL 3157904, at *3 (citing *Acura of Bellevue v. Reich*, 90 F.3d 1403, 1409 (9th Cir. 1996) ("Allowing judicial review in the middle of the agency review process unjustifiably interferes with the agency's right to consider and possibly change its position during its administrative

proceedings.")).  To the extent Plaintiff believes that Defendants reopened his proceedings only to deprive Plaintiff of the ability to seek judicial review, the Court notes that Plaintiff will have an opportunity to seek review once the agency decision is final.

Accordingly, the Court dismisses Plaintiff's Complaint without prejudice.[5]  Further, because the Court has no jurisdiction to consider the merits of Plaintiff's claims, the Court also denies Plaintiff's Motion for a TRO as moot.

## IV.   CONCLUSION

For the foregoing reasons, the Court **DISMISSES** Plaintiff's Complaint **WITHOUT PREJUDICE** to filing a new complaint when the agency decision is final and **DENIES** Plaintiff's Motion.

**IT IS SO ORDERED**.

DATED:  April 30, 2024

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE

---

[5] The Court need not reach the remainder of Defendants' arguments in opposition to the Motion.